Case No. 24-2343, Myers Lawn Care Services v. Russell Fragala. So these cases are interconnected, so I think it does make sense for counsel both to be here, and I don't know if you want to allocate your time differently, rather than doing five and then on one issue, we could flip it. However, you want to proceed, and we could give you 10 minutes to use at your discretion, addressing both, if you'd prefer to do that, too. Okay, well, we'll hear first from Mr. Burke. Good morning, Your Honor. Did you understand the question? No, I'm sorry. So I'd rather do this as 10 minutes to discuss the entire case, rather than somehow artificially separate out the two different claims. Because the real claim with respect to 2343 is about mootness, which turns on how the other case comes out. So it may be more logical to talk about that one first. And what Judge Park was offering you was the opportunity to set the clock at 10 minutes, discuss all of your arguments, and do this all as one integrated whole. Very well, Your Honor. I think I understand. I'm prepared to do them both separately, but I'll do my best. I agree, it is about the mootness issue, and to me, the mootness issue is an easy matter of law. The case is ongoing at the time, well, after the district court declared it moot, because it – I guess the court thought it was legally done, but it wasn't because we appealed. So under the – Yeah, but if you lose the appeal, then it becomes moot, right? Correct. If you lose the appeal on 45, then 43 becomes moot. So that's why I think the question is, doesn't it make more sense to talk about 45 first? Yes, Your Honor. Okay. So why don't we set the clock at 10 minutes? We'll do both 2345, and it sounds like you will, Mr. Burke, address that first, but also address 2343, the issue there, as much as you want to, using your time. Thank you. For rebuttal, let me – you reserved a minute for rebuttal. Is that still – I reserved a minute for rebuttal, thinking I only had five minutes to start. Two minutes for rebuttal, then. Very good. Thank you, Your Honor. Thank you. I'll begin. Good morning, Your Honor. It is the pleas of the Court, William Burke for Appellant Myers, Lawn Care Services, Inc., Myers. A debtor, Russell Fregala, filed a Chapter 7 bankruptcy and named Myers as one of the creditors. Myers filed a proof of claim, citing services performed as the basis of the claim, and attached a 12-page pretrial statement describing why Mr. Fregala does not have a corporate veil to shield him from liability of the debt. The pretrial statement had been generated in the previous state court action. That was ongoing. Appellate Pryor requested that Myers send him copies of all the documents produced during discovery in the state court action, and Myers complied. Myers commenced an adversary procedure against Mr. Fregala, stating that the debt owed Myers was not dischargeable pursuant to 523A2A and or 523A6. The advanced procedure proceeded to a bench trial, which is detailed in our opening briefs, after which the bankruptcy court issued its decision after trial and judgment, holding that the debt is dischargeable and that Myers had not met the elements necessary to pierce a corporate veil. All right. Can we stop right there at the piercing of the veil? As I understand it, your principal argument about veil piercing is that the issue of veil piercing was waived by Mr. Fregala in the state court action by failing to assert it. Is that right? Are you relying on what I would call a conventional veil piercing argument that Fregala had disregarded the corporate formalities and used the corporate form to perpetrate a fraud or both? What are you saying? In the state court action, in the pretrial statement, it lays out all the fraud claims that we're making. But Mr. Fregala answered the complaint individually, but he also sued my client individually.  Excuse me. I understand what happened, but I thought it was a simple question. Thank you. The bankruptcy judge said no veil piercing, and I'm asking you what is your theory of why he was wrong? Is it A, what I would call a conventional veil piercing, failure to respect corporate formalities and using the corporate form to perpetrate a fraud, or B, that there was some kind of waiver because of what you were just going to tell me about, which I understand what happened, that Mr. Fregala asserted a claim in his own name after being sued in his own name in the Pennsylvania action, or is it both? It's both. Okay. Right. He waived it when he sued my client, and still is suing my client. Why would that be so? In other words, if I'm sued in my personal capacity, and I do say, wait a minute, I shouldn't be here in my personal capacity at all, but if we are going to be here, he's the one who's wrong, and I'm suing him for his role in this. Why does that waive the issue of really the claim that is being made by the plaintiff in this case is properly made against the corporation and not against me personally? He's being sued personally and then turns around and resues my client personally and saying, but your client cannot sue me personally because I have a corporate veil, but I can sue you personally. Well, doesn't the latter depend wholly on – I'm not even sure that that's what he did, but if that's what he did, if he sued your client personally, that turns on whether your client's corporate veil should be pierced. It doesn't say anything about his right to assert a corporate veil in the action, the primary action that was brought, does it? One of the elements – no, Your Honor, if I could explain. One of the elements of piercing a corporate veil is to determine he acted individually, and his fact that he sued my client personally and is still suing my client personally establishes the individuality element of corporate veil piercing. Additionally, he committed fraud, and that personally – What is fraud? As I understood it, the fraud that seemed to scream out in the bankruptcy court trial was that he lied about what happened. But does that make the underlying claim about which he lied anything other than a conventional breach of contract claim? In other words, the claim that you're raising in the bankruptcy court and in the state court action is a claim that the contract was breached because you weren't paid. The contract was with the corporation. Why does that become a fraud claim because the principle of the corporation lies about the facts in the litigation? Your Honor, I would say that there's two issues here. There's the claim, and then there's the fraud that caused the debt not to be dischargeable. As to the claim, it was not contested, and that's why it was allowed for the ETP court. It hadn't been contested yet. Correct. It then is contested by the trustee. But it was a final – when it was – it wasn't contested, but there was – the bankruptcy court issued a judgment finding it. That's a judgment against – a judgment in a trial between you and Fergala, not a case between you and the trustee. The judgment said three things. The judgment said that the appellant had not met the needs to find the debt non-dischargeable through 523A. Right, because it was not a fraud claim, because it was a simple breach of contract claim. Right. Right, okay. No, no, I'm sorry. The judgment didn't say that, Your Honor. The judgment didn't address the claim. The claim was never addressed. Why was the claim not dischargeable – why was the claim dischargeable in bankruptcy? The debt would be dischargeable. Excuse me. The issue before the bankruptcy judge was, is this non-dischargeable because it is a fraud claim? And the district court held it was dischargeable. Is that not right? The bankruptcy court held it was dischargeable. Right.  The bankruptcy court held that we had not met our needs, elements under 523A2A and 523A26. But the issue of the claim itself as its being proper was not addressed at all. The judge found – Well, the judge found that it was allowable because it had not been contested. Excuse me, Your Honor. But he also said it's a final judgment subject to res judicata. Well, it is. It is. It binds as res judicata the parties to that proceeding. And their privies, whatever they are.  We have to – All due respect, Your Honor. And the EDP court explains this. It was – anybody who could have – it was – the claim was filed four years before the judgment was entered. And is it not true that the trustee is entitled to object at any time under the bankruptcy rules up to 30 days before the final discharge of debts and distribution of the property? That's the rule in bankruptcy. The trustee can object. But if he's objecting after a judgment's been issued, honoring the claim. But it wasn't a judgment against him, was it? It was a judgment against – the judgment states, it reads, in this bankruptcy case. So the judgment as to the acceptance of the claim was to all the debtors. That's not how claim preclusion or issue preclusion works, is it? It's not a question of the court that enters the judgment says this is a final judgment for whatever purpose. It's whether, in fact, it is binding on the person against whom claim preclusion is asserted. That usually gets decided later. We decide whether – I mean, you know, I can enter a judgment as a district judge in a case before me and say, and this binds the entire universe. That doesn't make it bind the entire universe. It still is I only have the power to enter a judgment that binds the parties before me, right? Your Honor, respectfully. I think the – when he – when the court, bankruptcy court, recognized, accepted the plan, and they accepted it, he says in this bankruptcy court he doesn't just accept it for Myers, it's accepted for all the debtors. He wasn't accepting the plan. He was saying that this is an allowable claim because it hasn't been objected to. Right. Exactly. Why does that bind parties who were not parties to that litigation who otherwise have an opportunity and a right to object? The parties – the adversary procedure objection really – claim has nothing to do with them accepting the claim. The claim being accepted applies to all the debtors. All the debtors and the trustee could have made a claim at any time. Could have. And didn't. And didn't. And under EDP they don't get another bite of the apple. Okay. Okay. You've reserved a couple minutes for rebuttal. Yes, Your Honor. We'll hear from Mr. Pryor. Good morning, Your Honors. Robert Pryor of BFSNG Law Group, and I'm also the trustee in the case. In response to my objection to Myers' proof of claim, Myers essentially made only two points, neither of which withstands my scrutiny. First, they asserted that my objection was belated, and we've discussed that at some length at this point. I wasn't a party to the adversary proceeding. Typically, as a matter of practice, one only objects to claims when assets exist in a bankruptcy case, and we only acquired these assets much later on in the course of the case and relatively promptly filed an objection. So their first point was that in some manner I was barred by the fact that this judgment had come down in the adversary proceeding, to which I wasn't a party. And I would note that in top of the judgment that Judge Grossman issued, there was a decision at the trial, which went into great detail, as to whether or not Myers had made a claim for non-dischargeability. Putting aside for a moment the rule that Judge Lynch cited about your ability to object within 30 days, were you a trustee at the point of the adversary proceeding? Had you been appointed yet? Oh, at all points in time, Your Honor, yes. And you could have entered into that litigation, correct? No. It's a private dispute, Your Honor. So you could not have? Yeah. The issue in that litigation is whether the obligation of the debtor to the creditor should survive the bankruptcy case, should survive my administration of the case. But you could not have been heard in that action? Today I don't see any reason why I'd want to be heard. Well, that's a different question from whether you could have been heard. Well, I'm not sure that I have any stake, any dog in that fight. All right. So just to bring this full circle, with your having succeeded on getting the claim dismissed, where does that leave Myers on its claim that it didn't get paid some? Well, my understanding, and I get it. Did it become another creditor of the estate? My understanding is that Myers also asserted a claim in the bankruptcy case of Fregales Corporation, where it belonged, and received the distribution with respect to that. But as to the creditors in the case of which I'm the trustee, they're not. I distribute the money to the actual creditors, and Myers gets nothing. Right, because in this bankruptcy, this is the bankruptcy of Fregales, the individual. And absent veil-piercing, this claim is just not good against him. Yes. And you are there arguing eventually on behalf of the creditors, not on behalf of Mr. Fregales, who's not going to get any money out of this one way or the other. You are arguing on behalf of the creditors of the corporation, of Mr. Fregales personally, who does have some assets, that this claim, unfortunately for the Myers Company, is only good absent veil-piercing in the corporate bankruptcy. Yes. Right? Yes. And the assertion that the veil should be pierced in Fregales' case was never made before Judge Grossman in connection with my objection to claim proceeding. No, it was made in the litigation between the adversary litigation between Myers and Fregales. Yes, Your Honor. And the other point they made was, again, this Court alluded to it, was that it seems to be entirely by virtue of the fact that Fregales counterclaimed in the Maryland State Court action, in his own name, that is counsel's basis for assertion that a claim exists against him. But certainly he and I are not united in interest. Whatever position he did or didn't take wouldn't be binding on me, but I agree with this Court that there is certainly nothing about the fact that he counterclaimed in his own name that would be an acknowledgment that he's waiving his defense of personal liability. Thank you. Thank you, counsel. I'll hear a rebuttal. Your Honor, with all due respect to the Court, I think maybe it's being emphasized a little too much. The idea, the fact that Fregales is suing my client individually based on alleging breach of the same contracts that are the claim, that in and of itself doesn't mean it's waived a corporate bail, but it meets the element issue of individuality. That's what we're saying. But it could have been individuality and not been fraud. Then it wouldn't have made a difference. But in addition to that, it's he committed incredible amounts of fraud, perjury, criminal acts. Assets were in the case. That's not exactly fraud, is it? I mean, the — in other words, as I've always understood it, the question for bail piercing, you've got to — your corporation, Myers, has a claim against Fregales Corporation. Call it the landscape or the corporation for breach of contract. Now, if during the course of a trial of that matter, Fregales, as a witness, as even a party who's accused wrongly perhaps as being liable on that breach of contract claim, if he lies, that's a very bad thing for him to do. But whether the corporate bail is pierced has to do with the conduct that occurred that is being sued about. And I'm still having trouble, as I think Judge Grossman had trouble, understanding that as a fraud claim. Unless — because ordinarily, the fact that you don't perform what you promised to perform is just a breach of contract. It would only be if he entered the contract in the first place with the intention of not performing that there would be a possible fraud claim. And I don't see any evidence of that. And more importantly, it doesn't matter whether I see it, Judge Grossman, who was the fact-finder, said there was no such fraud. When you say there's a horrible fraud, there's a horrible fraud in his constructing defenses for his liability or his company's liability. That doesn't go to whether the claim is a fraudulent claim either for bankruptcy purposes or for piercing the corporate bail. And what am I missing? I'll do respect, Your Honor. What you're missing is Judge Grossman didn't really decide whether or not there was a fraud. If you read the decision after trial, what he said was, we failed to — under the 523A2A, A2AA, we had failed to show — and I disagree with this — we had failed to show that it was used to induce Myers into the contract. Yes, exactly. That means it wasn't a claim of fraud.  Absolutely. Yes, Your Honor. But under 523A6, inducement's not an element. If the fraud is malicious, as this clearly was, then that in itself is enough to pierce a corporate bail. But that — excuse me — that wasn't a matter of piercing the corporate bail. That was a matter of discharging the debt. And if the fraud is such that it is malicious, it clearly was malicious. And it was fraud across the line of just breaching a contract. He said that my client damaged all 22 worksites. And it turns out that the contractor, a fact witness, had investigated all 22 worksites and said — and came to the conclusion that none of them had been damaged. And then he went — it was Walmart. He went to the Walmart managers, and they all concurred. So what your position is, just so I understand it, is that if a plaintiff files a claim in bankruptcy for breach of contract, and in the course of defending that claim in an adversary proceeding, the bankrupt party commits perjury and tries unsuccessfully to persuade the finder of fact that the contract was not breached, that renders the contract claim non-dischargeable in bankruptcy. Excuse me. Is that the principle that you are advancing? If I could back up a bit. The claim was not based on a breach of the contract. I filed the claim. And I stated it was for services performed. And that's why I added a 12-page pre-filed statement. So this was just a — there was no contract claim at all? This was just a claim for unjust enrichment because you as a volunteer provided certain services and you weren't compensated for it? That's what the claim was? When the claim was filed, it was to show that the debt was not — it was meant to lay the groundwork that the debt was not dischargeable because of A2AA or 6. And that was based on services performed. And that's why we added the pre-trial statement showing that services were performed, and that he was saying that my guy had — No more services were performed under a contract. And you were entitled to be paid according to the contract, right? I'm sorry, Your Honor. You're asking what services were not performed? Well, the services that you allege you are entitled to be paid for were services that were performed under a contract. And the amount that you were entitled to be paid for those services that were performed were services — was the payment that was promised in a contract. Plus, he was suing my client for $100,000 to repair the alleged damages that didn't occur. That was all into it. It wasn't — it was bad enough that he didn't pay my guy for what he did when he knew he did. He didn't — he didn't damage any of the worksites. But yet my guy — So this was a claim for libel that was being made or defamation? It was based — At the time, I wasn't suing him for libel. We were suing him because — Because you didn't get paid under the contract. And we were defending his lawsuit against my guy for $100,000 for repairing damages that didn't occur. He's still suing him for that. Okay. That's the problem. That's part of the problem. I've got to go back to Maryland court now and try to get that court dismissed now that the bankruptcy courts found that there was notes fraud. But the court didn't actually find that. If you read the decision after trial closely, what the court is saying is we didn't — we didn't meet the element of inducement into getting into the contract. I disagree, and for the reasons I've stated there. But under A-6, inducement is not an element. If the fraud is frivolous — I'm not frivolous, sorry — malicious, and this clearly is. I've read all the cases on A-6. This beats them all in terms of being malicious. Okay. Thank you, counsel. I think we have your argument. Thank you both. We'll take the case under advisement.